UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-92-HRW

JAMES J. GORMLEY                                                    PETITIONER

VS:                    **MEMORANDUM OPINION AND ORDER**

BRIAN PATTON, ET AL.                                               RESPONDENTS

**** **** **** ****

James J. Gormley ("Gormley") is a prisoner incarcerated at the Federal Correctional Institution at Ashland, Kentucky, who has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  [Record No. 2]  This matter is before the Court for screening.  28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002).

As Gormley is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys.  *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).  During screening, the allegations in his petition are taken as true and liberally construed in his favor.  *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).  But the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief.  *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

I.      **BACKGROUND**

Petitioner Gormley, an attorney, was convicted by a jury on November 19, 1999, for his participation in a nationwide investment fraud scheme.  Specifically, Gormley was convicted of conspiracy to commit wire fraud, securities fraud, and obstruction of justice, in violation of 18 U.S.C. § 371; conspiracy to launder money in violation of 18 U.S.C. § 1956(h); aiding and abetting

wire fraud in violation of 18 U.S.C. §§ 2, 1343; aiding and abetting money laundering in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(I); and perjury in violation of 18 U.S.C. § 1623. The court sentenced Gormley to a 97-month term of imprisonment to be followed by a three-year term of supervised release, and ordered Gormley to pay approximately $780,000 in restitution. Gormley then filed a notice of appeal to the Fourth Circuit, which affirmed his conviction on direct appeal on June 7, 2001. *United States v. Gormley*, 98-CR-152, Southern District of West Virginia; *United States v. Bollin*, 264 F.3d 391 (4th Cir. 2001).

Petitioner served the bulk of his term of incarceration with the Bureau of Prisons ("BOP") at the low security branch of the Federal Correctional Institution in Coleman, Florida. Pursuant to 18 U.S.C. § 3624, on April 12-13, 2007, Gormley was transferred to a Residential Re-Entry Center ("RRC"), or halfway house, operated by Dismas Charities in Lexington, Kentucky to serve the remainder of his sentence until its expiration on August 15, 2007. As part of his transition to society, on May 12, 2007 Gormley obtained employment as a paralegal with attorney Charles Curry.

At the RRC, it appears Gormley was permitted to be outside of the facility without supervision, but only for certain prescribed time periods. On May 13, 2007, Gormley was cited for "Violating a Condition of a Community Program" because he was gone from the facility grounds for 80 minutes without permission. Gormley appears to concede that his absence was unauthorized, offering only an explanation for his absence. On June 7, 2007, a Disciplinary Hearing Officer ("DHO") located outside of Lexington, Kentucky found Gormley guilty of the infraction and ordered that Gormley lose 2 weeks of home passes, revoked 8 days of good conduct time pushing his release date back to August 23, 2007, and directed that he would be removed from the RRC if he was found guilty of another infraction within sixty days. Gormley alleges that this "hearing" violated his due

process rights because he was not permitted to be physically present at the hearing or make oral arguments directly to the DHO.

On July 6, 2007, Gormley was cited for "Being Insolent to a Staff Member." The disciplinary review form indicates that on this and prior occasions Gormley threatened to sue facility staff and directed expletives at them. Gormley alleges that this citation is meritless, and is the byproduct of staff resentment caused by his conduct in writing to the BOP to report "illegal and unethical conduct by half-way house staff." Because Gormley had been cited for a second violation within sixty days in violation of the terms of his first citation, on July 10, 2007, federal officers removed him from the RRC and transported him to the Grayson County Detention Center, where he was held for 8 days before his ultimate transfer to FCI-Ashland. On July 13, 2007, a DHO located outside Lexington, Kentucky again found Gormley of the violation of Insolence, and directed that he forfeit 8 days of good conduct time, pushing his release date back to August 31, 2007. The record discloses that Gormley and two staff members submitted written statements to the DHO prior to the hearing. Gormley alleges this hearing likewise failed to comply with the requirements of due process by preventing him from being physically present at the hearing and from making oral arguments directly to the hearing officer.

On August 2, 2007, Gormley was receiving a haircut from a prison barber. This haircut apparently took longer than expected, causing Gormley to be late for a 9:00 a.m. Arrival and Orientation lecture. Because of his tardiness, Gormley received another citation, again resulting in the loss of 8 days good conduct time. The records provided by Gormley indicate that he admitted the charge, and does not appear to challenge the procedures used to find him guilty of the infraction.

Gormley has also filed a motion asking the Court to expedite its consideration of his petition. As previously noted, Gormley asserts that he is entitled to release on August 23, 2007, and that the

BOP would release him in any event on September 8, 2007.  Gormley seeks expedited review in order to obtain meaningful relief.  In addition, Gormley has sought relief from his convictions under 28 U.S.C. § 2255, and has a brief due in the Fourth Circuit Court of Appeals in the near future.  A review of the Fourth Circuit's PACER database indicates that Gormley has requested and received numerous extensions of time to file his appellate brief on the same grounds that he asserts here, namely, limited access to legal materials and the delay in his release.  Gormley's brief is currently due on or before September 24, 2007.

## II.     DISCUSSION

Federal prisoners are required to exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241.  *United States v. Oglesby*, 52 Fed.Appx. 712, 714 (6th Cir. 2002); *United States v. Wilson*, 503 U.S. 329, 335 (1992).  This requirement is not mandated by the Prison Litigation Reform Act, but is wholly judge-made.  *Wesley v. Lamanna*, 27 Fed.Appx. 438, 438-39 (6th Cir. 2001).

Gormley asserts that he should be excused from the exhaustion requirement because that process could not possibly complete before he was originally scheduled to be released on August 23, 2007, thus rendering exhaustion futile.  Because exhaustion is a judicially-created requirement for Section 2241 petitions, the Court may waive the requirement if it finds that exhaustion would be futile.  *Davis v. Keohane*, 835 F.2d 1147, 1149 (6th Cir. 1987).

The two decisions by the BOP which Gormley attacks were made on June 7, 2007, and July 13, 2007, respectively.  Gormley did not file the present petition until August 16, 2007, more than two months after the first disciplinary action and one month after the second.  The Court finds no basis for excusing Gormley's failure to file a grievance with respect to the June 7 hearing.  At that time, more than two months remained before Gormley expected to be released.  Gormley, an

4

attorney, appears to have fully familiarized himself with BOP regulations, presumably including 28 C.F.R. § 542.18, which permits an inmate in federal custody to request expedited consideration of his grievance or appeal.  Further, Gormley remained at the RRC until July 10, and thus there existed no barrier to his pursuit of an administrative appeal of the sanction.  Having failed to administratively exhaust this claim, it must be denied.  *Wesley*, 27 Fed.Appx. at 439.

The same cannot be said of Gormley's ability to seek meaningful and timely relief from the July 13 hearing.  Gormley did not arrive at FCI-Ashland until July 18, and was probably unaware of the DHO's decision until after his arrival.  At that time, only approximately one month remained before he expected to be released.  Gormley's perplexing decision to wait nearly a month before filing the present petition notwithstanding, the Court will excuse Gormley's failure to attempt exhaustion of this claim.

Any claim that either hearing violated Gormley's rights under the Due Process Clause nonetheless fails on the merits.

To determine whether a person's right to procedural due process has been violated, a court first enquires whether the government has taken a thing from the plaintiff which is so fundamental to the concept of ordered liberty as to warrant protection under the Due Process Clause.  If so, the court must determine whether the procedures used to deprive the plaintiff of his or her interest were constitutionally adequate.  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989).

It is well-established that an inmate possesses a due process liberty interest in good time credit which he or she has already earned and is vested as it will inevitably affect the inmate's duration of confinement.  *Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Blevins v. Lamanna*, 23

Fed.Appx. 216, 217 (6th Cir. 2001). The remaining question, then, is whether the process employed

by the BOP in this case adequately protected that interest. The Sixth Circuit has explained:

> When a prisoner faces the loss of good time credits, due process requires that a
> prisoner receive the following hearing rights: 1) written notice of the hearing at least
> 24 hours in advance; 2) an opportunity, when consistent with institutional safety and
> correctional goals, to call witnesses and present documentary evidence in his
> defense; and 3) a written statement by the factfinder of the evidence relied on and the
> reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67, 94
> S.Ct. 2963, 41 L.Ed.2d 935 (1974). Further, some evidence must exist to support the
> disciplinary conviction. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445,
> 455-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

*Lee v. Young*, 43 Fed.Appx. 788, 789 (6th Cir. 2002). The cases cited by Gormley are inapposite

as they relate to the requirements of due process before parole may be revoked as described in

*Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). Gormley acknowledges that he had not yet begun

his period of supervised release, and therefore had not yet obtained the greater degree of freedom

from restraint which inheres in parole.

Gormley has not alleged that any of these three rights were violated. Instead, he asserts that

he has a due process right to be physically present at the hearing and to present oral argument on his

own behalf. The basis for this asserted right appears to be BOP Program Statement 5270.07, which

provides that "[a]n inmate has the right to be present throughout the DHO hearing, except during

a period of deliberation or when institutional security would be jeopardized." However, that same

Program Statement expressly provides that "[w]hen an inmate escapes or is otherwise absent from

custody, the UDC shall conduct a hearing in the inmate's absence at the institution in which the

inmate was last confined." In addition, 28 C.F.R. § 541.16 provides that "[i]f the institution's DHO

is not able to conduct hearings, the Warden shall arrange for another DHO to conduct the hearings."

This provision may apply where, as here, the inmate is not confined at a BOP-operated facility but

is housed at one of many RRCs. The Program Statement provides that in such cases "[t]he alternate

6

DHO may be a Regional Disciplinary Hearing Administrator, a DHO from another institution, or a Captain from another institution who has passed a DHO certification test."  The record therefore fails to clearly indicate that the BOP actually failed to follow the requirements of its Program Statements.

But even assuming that the BOP's use of a Regional DHO was contrary to its own Program Statement, an agency's failure to follow its own regulations does not amount to a *per se* due process violation.  Rather, to determine whether a person's due process liberty interest was deprived unfairly or arbitrarily, a court must look to what the United States Constitution, not state or federal law, requires.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("However, it is well-settled that state law does not ordinarily define the parameters of due process for Fourteenth Amendment purposes, and that state law, by itself, cannot be the basis for a federal constitutional violation. *See Purisch v. Tennessee Technological Univ.*, 76 F.3d 1414, 1423 (6th Cir.1996) ("Violation of a state's formal [employment grievance] procedure ... does not in itself implicate constitutional due process concerns.")).  As previously noted, while the Program Statement afforded Gormley the right to be present at a disciplinary hearing in some circumstances, the federal constitution does not.  *Bogle v. Murphy*, 2003 WL 22384792, *5-6 (W.D.N.Y. 2003) (unpublished disposition) (while New York regulations afforded inmate right to be present at disciplinary hearing, *Wolff* does not, and hence no due process violation occurred).  Because Gormley does not allege that he was not given prior notice of the charge, was denied the opportunity to present evidence and/or a statement on his behalf, or failed to receive a written statement from the DHO explaining the basis for the decision, he has failed to state a due process claim.  *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir.1995).

**III.    CONCLUSION**

The Court being sufficiently advised, it is

**ORDERED** as follows:

1.      Petitioner's Motion to Expedite [Dkt. 4] is **GRANTED**.

2.      The petition for a writ of habeas corpus [Dkt. 2] is **DENIED.**

3.      The Court certifies that any appeal would not be taken in good faith.  28 U.S.C.

§1915(a)(3);  *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v.*

*Sparkman*, 117 F.3d 949 (6th Cir. 1997).

This August 23, 2007.

Signed By:

*Henry R Wilhoit Jr.*

**United States District Judge**